UNITED STATES DISTRICT COURT
DISTRICT OF MAINE


| | |
|---|---|
| COLONY INSURANCE COMPANY, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>DANLY, INC., et al., )<br>)<br>Defendants )<br>)<br>and )<br>)<br>BABAK YAZDANI, et al., )<br>)<br>Parties-in-Interest ) | Civil No. 10-308-P-H |

**************************************************************************

| | |
|---|---|
| MICHAEL YAZDANI, et al., )<br>)<br>Plaintiffs )<br>)<br>v. )<br>)<br>DANLY, INC., et al., )<br>)<br>Defendants )<br>)<br>and )<br>)<br>COLONY INSURANCE COMPANY, )<br>)<br>Intervenor ) | Civil No. 09-108-P-H |

*MEMORANDUM DECISION AND ORDER ON DISCOVERY DISPUTE*

This order is issued in follow-up to teleconferences that I held with counsel on September 13 and 21, 2010, bearing on the matter of files of the Danly parties in possession of their counsel, Friedman Gaythwaite Wolf & Leavitt ("FGWL"), which FGWL maintains that it need not produce in response to scheduling orders issued in both the *Colony* and *Yazdani* cases. *See* Docket Nos. 16, 35, 37, *Colony*; Docket Nos. 137, 144, 150, *Yazdani*.

At the conclusion of the September 21 teleconference with counsel, I ordered FGWL to provide to the court for *in camera* review, no later than noon on Thursday, September 23, 2010, copies of all specific documents (the "Itemized Documents") listed on a September 17, 2010, log detailing documents that FGWL had declined to produce (the "September 17 Log"). *See* Docket No. 37, *Colony*, at 6; Docket No. 150, *Yazdani*, at 6. In addition to the Itemized Documents, all of which are internal emails between or among FGWL attorneys and staff, the September 17 Log lists two general categories of documents that FGWL has declined to produce: (i) time and billing records and (ii) emails and notes and memoranda relating to other cases and incorrectly filed in the *Yazdani* file (together with the Itemized Documents, the "Withheld Documents"). I reserved ruling, pending my *in camera* review, on the questions of whether to order an electronic search of FGWL files and whether to order the turnover of any of the Withheld Documents. *See id.* at 7.

On September 23, 2010, FGWL provided to me, *in camera*, copies of the Itemized Documents. After careful review of those documents, and with the benefit of argument of counsel during both the September 13 and the September 21 teleconferences, for the reasons that follow, I now deny the request of the Yazdani parties to order an electronic search of FGWL files, grant in part and deny in part the requests of Colony and the Yazdani parties for access to the Withheld Documents, order FGWL to produce the documents specified below on or before October 6, 2010, and direct that the Clerk's Office schedule a teleconference with counsel as soon as possible

thereafter to discuss the resetting of the deadline(s) for the filing of dispositive motions in the *Colony* case, said deadline(s) having been suspended pending my adjudication of the instant discovery dispute.

## I. Request for Access to the Withheld Documents

### A. The Parties' Arguments

The parties' dispute centers on whether FGWL properly withheld certain documents in the face of directives in scheduling orders issued in both the *Colony* and *Yazdani* cases that the Danly parties "provide to [Colony] complete copies of their counsels' files, excepting only items claimed to be privileged, if any, on or before August 16, 2010." *See* Docket No. 16, *Colony*; Docket No. 137, *Yazdani*.[1]

FGWL took the position that the word "files" should be construed in accordance with Ethics Opinion #187 of the Maine Board of Overseers of the Bar, which provides guidance concerning the contents of a client's file, in particular the contents that must be turned over to the client upon his/her request. Opinion #187 delineates as an overarching principle, in discerning which documents are part of a client's file, whether "information is valuable to the client in relation to the accomplishment of the services for which the attorney was retained[.]" *Id*. In making that determination, "the lawyer must assess the point in time when the client's request for the file is made and any information that the lawyer has regarding the reason for the request." *Id*. (footnote omitted). "Thus, for example, an attorney's notes regarding potential witnesses to be interviewed in any litigated matter will be useful information before the trial, but may not be useful after the trial has concluded and the witness's testimony has been reduced to a transcript." *Id*.

---

[1] The reference to "Intervenor" in the version of the scheduling order filed in the *Colony* case, *see* Docket No. 16, *Colony*, evidently is meant to be a reference to Colony. Colony, the plaintiff in the *Colony* case, is the intervenor in the
(*continued on next page*)

Opinion #187 lists the following as documents that ordinarily need *not* be provided to the client: (i) time sheets and billing records, (ii) internal administrative documents such as conflict checking forms and case assignment or staffing memoranda, (iii) internal memoranda that set out a lawyer's general impressions of the client and the matter, the options for staffing or handling a case, and certain internal firm business information, and (iv) drafts of documents with certain exceptions. Me. Bd. of Overseers of Bar, Op. 187 (2004) ("Opinion # 187"). The following, by contrast, ordinarily *should* be provided to the client: (i) all pleadings, (ii) all correspondence, (iii) research memoranda, (iv) notes and memoranda concerning information obtained from client interviews, witness interviews, facts of the case, and communications with other parties on the matter, and (v) certain drafts of documents (*e.g.*, where prior drafts advanced legal arguments that might still be used in the matter or where important to show the history of negotiations or otherwise pertinent to the future understanding of the outcome of the matter). *Id.*

FGWL takes the position that it has produced all documents comprising the Danly parties' files as that term is defined in Opinion #187, including documents not ordinarily considered to be part of a client's files, such as internal attorney emails, that it has deemed valuable to the Danly parties. *See* Docket No. 35, *Colony*, at 4; Docket No. 144, *Yazdani*, at 4.

Colony and the Yazdani parties argue that Opinion #187 has no bearing on the instant dispute. *See id.*; *see also* Docket No. 37, *Colony*, at 4; Docket No. 150, *Yazdani*, at 4. They state that the Danly parties agreed, as is reflected in the relevant scheduling orders, to turn over all save privileged documents from their files. *See id.* They reason that, no privilege having been claimed, every one of the Withheld Documents must be turned over. *See id.* James Bowie, the Danly parties' new counsel, agrees that this was in fact the Danly parties' agreement. *See* Docket No. 37, *Colony*,

---

*Yazdani* case. There is no other intevenor in either case.

4

at 6; Docket No. 150, *Yazdani*, at 6.  Mr. Bowie in effect confirms that the Danly parties themselves want the Withheld Documents produced.  *See id*.[2]

Alternatively, Colony and the Yazdani parties contend that, to the extent that Opinion #187 provides any guidance, (i) the production of some internal FGWL emails has effectuated a waiver with respect to similar Withheld Documents and (ii) even under Opinion #187, the Withheld Documents should be ordered produced to the extent relevant to issues now of importance in the *Colony* and *Yazdani* cases, namely the question of the reasonableness of the *Yazdani* settlement and the asserted absence of collusion between the parties in the *Yazdani* case.  *See* Docket No. 37, *Colony*, at 4; Docket No. 150, *Yazdani*, at 4.  The Yazdani parties take the position that at least two categories of Withheld Documents, those pertaining to FGWL lawyers' impressions of the case, clients, and opposing counsel and those pertaining to billing, are relevant to those issues.  *See id*. at 4-5.  Colony takes no position on whether, assuming *arguendo* that Opinion #187 applies, internal billing documents should be produced.  *See id*. at 5.

**B.  Analysis**

I construe the word "files," as used in the applicable scheduling orders, in accordance with Opinion #187.  While the parties agreed to the production of all but privileged documents from the Danly parties' counsel's files, and the relevant scheduling orders so reflect, that begs the question of what constitutes those clients' files.  Opinion #187 fills that void.  I decline to find any waiver in FGWL's decision to produce select documents that, pursuant to Opinion #187, normally would not need to be produced to a client.  Opinion #187 contemplates that attorneys will make precisely such

---

[2] In separate motions filed on September 21 and 22, 2010, FGWL attorneys Harold Friedman, Martha Gaythwaite, and Roger Brunelle moved to withdraw as attorneys for the Danly parties in the *Yazdani* case.  *See* Docket Nos. 145, 148, *Yazdani*.  I deferred ruling on those motions pending the adjudication of the instant dispute.  *See* Docket Nos. 147, 149, *Yazdani*.  Mr. Bowie alone is listed as representing the Danly parties in the *Colony* case.

5

case-by-case decisions in assessing whether information is "valuable to the client" and, hence, must be considered part of a client's file and turned over to the client upon request. *See* Opinion #187.

That said, Colony and the Danly parties are correct that, to the extent any of the Withheld Documents fairly can be characterized as relevant to the issues currently at stake in the *Colony* and *Yazdani* litigation, they should be ordered produced. This is so regardless of whether FGWL, as a subjective matter, genuinely characterized any of the Withheld Documents as "valuable to the client" pursuant to Opinion #187.[3] Opinion #187 itself recognizes that, although, under the Bar Rules, an attorney might have no obligation to provide a client, upon request for the file, with internal administrative documents such as conflict checking forms and case assignment or staffing memoranda, "a court or tribunal could order an attorney to provide those documents if the attorney and the client are involved in a dispute that would render the documents relevant." Opinion #187 n.3.

Although the example supplied in Opinion #187 pertains to one category of typically withheld documents, internal administrative files, the principle applies to all documents withheld on the basis that they do not constitute part of a client's files. The scope of discovery is broad: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1).

---

[3] The question of whether documents are "valuable" to the Danly parties, for purposes of Opinion #187, is a nuanced one. Opinion #187 frames the question as whether "information is valuable to the client in relation to the accomplishment of the services for which the attorney was retained[.]" Opinion #187. It might be argued that the issue of the reasonableness of the Yazdani settlement is not strictly within the scope of services for which FGWL was retained. But, even assuming *arguendo* that were so, Opinion #187 directs that, in determining whether information is "valuable to the client," the attorney must "assess the point in time when the client's request for the file is made and any information that the lawyer has regarding the reason for the request." *Id*. (footnote omitted). Thus, even though the information in question may not have been valuable to the Danly parties in relation to the services for which FGWL was retained, it still is properly characterized as "valuable" at the time that the client requested the file.

6

Pursuant to the operative scheduling orders, the Danly parties were afforded the opportunity to withhold documents on the basis of the assertion of a privilege. They elected not do to so. The sole question presented, therefore, is whether the Withheld Documents are relevant to the *Colony* or *Yazdani* litigation. In that regard, Colony and the Yazdani parties correctly characterize the key issue as whether the proposed settlement between the Yazdani and Danly parties in the *Yazdani* case is reasonable, in good faith, and not the product of collusion. *See* Docket No. 137, *Yazdani*, at 2. Judge Hornby has scheduled a hearing on that precise question for December 6, 2010, *see* Docket No. 139, *Yazdani*, and Colony has been permitted to intervene "for the purpose of full and complete participation in the [reasonableness] hearing[,]" including "the right to present witnesses, admit exhibits, object to the calling of witnesses or the admission of exhibits, and to cross-examine witnesses[,]" Docket No. 136, *Yazdani*, at 1.

With these precepts in mind, I now **GRANT** in part and **DENY** in part the request of Colony and the Yazdani parties for access to the Withheld Documents. I deem the following Itemized Documents relevant, and **ORDER** that FGWL produce them to Colony, with copies to counsel for the Yazdani parties and to the Danly parties' new counsel, Mr. Bowie, on or before October 6, 2010: all emails characterized in the September 17 Log as concerning one or more FGWL attorney's impressions of any one or more of the following: the case, the case status, a case document, the client(s), information from the client(s), the plaintiffs' strategy, the plaintiffs, counsel, the plaintiffs' counsel, assignments, or staffing, **except** for the following, which do not have discernible relevance to the remaining issues in the *Colony* and *Yazdani* cases:

1. An August 18, 2009, email between Karen Wolf and Carrie Hall-Indorf (legal assistant) regarding a case document.

2. Emails dated April 23, 2010, between Martha Gaythwaite and Karen Wolf regarding

impressions of the case.

3. Emails dated May 14, 2010, between Martha Gaythwaite and Brett Leland regarding status and scheduling of work.

4. Emails dated May 25, 2010, between Martha Gaythwaite, Erik Peters, and Brett Leland regarding impressions of the case and assignments of work.

I decline to order FGWL to produce any of the following Withheld Documents, none of which has discernible relevance to the remaining issues in the *Colony* and *Yazdani* cases:

1. The four Itemized Documents specified above.

2. Any Itemized Document characterized as concerning budgeting and billing issues.

3. An email dated July 21, 2010, between Martha Gaythwaite, Harold Friedman, and Karen Wolf regarding advice provided by Bar Counsel, as well as a memorandum from Martha Gaythwaite to the *Yazdani* file dictated on September 17, 2010, and transcribed on September 20, 2010, concerning a conversation on September 17 with Bar Counsel, and a letter dated September 21, 2010, from Martha Gaythwaite to Daniel Rapaport and Lisa Tripler concerning FGWL's decision to move to withdraw as counsel to the Danly parties in the *Yazdani* case.[4]

4. Time and billing records.

5. Emails and notes and memos relating to other cases and incorrectly filed in the *Yazdani* file.

---

[4] In an abundance of caution, Ms. Gaythwaite provided the latter two documents, which postdated the September 17 Log, as part of her *in camera* production although they were not within the purview of my order regarding the production of documents for *in camera* review. She sought guidance as to whether she should file an amended privilege log including them. That step is not necessary. I am satisfied that they need not be produced.

8

## II. Request for Further Electronic Search

During the September 21 teleconference, the Yazdani parties requested that the court order FGWL to conduct a direct search of its computer files for potentially relevant internal attorney emails, stating that FGWL had relied on the decisions of its attorneys to place certain emails in client folders in circumstances in which the underlying issues were quite different from those now at stake, and FGWL had declined to undertake a comprehensive electronic search absent a court order. *See* Docket No. 37, *Colony*, at 4; Docket No. 150, *Yazdani*, at 4. FGWL invoked Federal Rule of Civil Procedure 26(b)(2)(B) in opposition to the request. *See id*. at 5-6. The Yazdani parties contended that application of that rule supported a court-ordered search. *See id*. at 6.

The request is **DENIED**. FGWL has invested more than 30 hours searching for documents responsive to the court's directive, including documents beyond the scope of those typically considered to constitute part of a client's files pursuant to Opinion #187. It has either produced or logged all documents discovered as a result of this extensive search. The Yazdani parties offer no reason to believe that further responsive documents exist or, if any do, that they are not cumulative of those already retrieved. Pursuant to Rule 26(b)(2)(B), FGWL has shown that the requested additional information is "not reasonably accessible because of undue burden[,]" and the Yazdani parties have not shown "good cause" for their request. Alternatively, pursuant to Rule 26(b)(2)(C), I decline to issue the requested order because "the burden . . . of the proposed discovery outweighs its likely benefit[.]"

## III. Setting of Scheduling Teleconference

The instant discovery dispute having been resolved, I **DIRECT** that the Clerk's Office schedule a teleconference with counsel as soon as possible after October 6, 2010, to discuss the

resetting of the deadline(s) for the filing of dispositive motions in the *Colony* case, said deadline(s) having been suspended pending my adjudication of the instant discovery dispute.[5]

***SO ORDERED***.

***NOTICE***

*In accordance with Federal Rule of Criminal Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to appeal the district court's order.*

Dated this 4th day of October, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[5] As I have previously indicated, *see* Docket No. 35 at 6 n.2, *Colony*; Docket No. 144 at 6 n.2, *Yazdani*, the parties should be prepared to discuss whether it continues to make sense to have separate deadlines for the filing of summary judgment motions in the *Colony* case.