# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

COLONY INSURANCE COMPANY,   )
  )
          PLAINTIFF   )
  )
v.   )
  )
DANLY, INC., ET AL.,   )        CIVIL No. 10-308-P-H
  )
          DEFENDANTS   )
  )
and   )
  )
BABAK YAZDANI, ET AL.,   )
  )
        PARTIES-IN-INTEREST   )

## DECISION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

In this declaratory judgment lawsuit, an excess liability insurance carrier seeks judgment that it has no obligation to pay benefits under its policy. The reasons, it says, are that (1) the underlying tort lawsuit, also filed in this court, Yazdani v. Danly, Inc., No. 2:09cv108-DBH ("the underlying lawsuit"), has been settled without its consent, and (2) the settlement in that lawsuit provides that the Insureds have no obligation to pay any damages to the injured parties. The injured parties have filed a counterclaim, seeking declaratory judgment that they are entitled to recover in a future reach and apply lawsuit against the carrier which, they say, they will file once they have judgment in the underlying lawsuit in accordance with the settlement agreement (first, they need judicial approval of their settlement). The Insureds have also filed a counterclaim

seeking their attorney fees growing out of the excess carrier's alleged breach of the duty to defend and indemnify; declaratory judgment that there is coverage; and judgment on claims under Maine's Unfair Claims Settlement Practices Act for the excess carrier's alleged failure to acknowledge and review claims in a timely manner, make a timely reservation of rights, or engage in reasonable settlement discussions. The excess carrier has moved for summary judgment on all claims. The injured parties have moved for judgment on the pleadings, and for summary judgment. All motions are denied.

### FACTS AND PROCEDURAL HISTORY

During the summer of 2007, a nine-year old boy suffered a serious injury to his right eye at the archery range of a summer camp owned by the Insureds. The minor's twin brother, who was also participating in the archery activity, witnessed the accident. The minor's parents, Babak and Lisa Yazdani[1] ("the Yazdanis") sued the summer camp and its owners. Compl., <u>Yazdani v. Danly, Inc.</u>, No. 2:09cv108-DBH (Docket Item 1). At the time of the accident, ACE American Insurance Company provided primary insurance coverage to the summer camp and its owners with a limit in the amount of $1 million per occurrence. Thaler Decl., Ex. AA (Docket Item 55-1). The plaintiff Colony Insurance Company provided excess liability coverage with a limit in the amount of $10 million per occurrence. Biondich Decl., Ex. 1 (Docket Item 53-1).

---

[1] The Yazdanis brought this suit individually and as personal representatives of their injured son and his twin brother. Compl., <u>Yazdani v. Danly, Inc.</u>, No. 2:09cv108-DBH (Docket Item 1).

The primary carrier provided the Insureds with a defense to the underlying tort lawsuit.  Biondich Decl. ¶ 6 (Docket Item 53).  In April 2010, in preparation for mediation, their attorney evaluated the case and concluded that the likely verdict range was between $500,000 and $750,000, below the policy limits of the primary insurer.  Biondich Decl., Ex. 4, at 13 (Docket Item 53-4).  After the mediation, however, the estimates changed.  The Insureds and Colony were advised that the Maryland Consumer Protection Act claim, if successful, could result in an additional recovery of attorney fees and costs that, as of the mediation, already amounted to $475,000.  Rapaport Decl. ¶ 21 (Docket Item 64).

Two days after the mediation, the primary carrier tendered its policy limit of $1 million.  Panzer Decl., Ex. 7 (Docket Item 60-7); Rapaport Decl. ¶ 22, Ex. 3 (Docket Item 64); Bowie Decl. ¶3, Ex. A (Docket Item 65).  Colony, however, would not participate in settlement negotiations over and above $1 million.  Rapaport Decl. ¶ 25.  The Insureds then retained at their own expense a new attorney who wrote a letter seeking to clarify Colony's coverage position.  Bowie Decl. ¶ 3, Ex. A.  In response, Colony issued a reservation of rights letter stating that "not only attorney's fees, but any other amounts awarded based on a violation of [the Maryland Consumer Protection Act] would be excluded from coverage under the Colony Policy."  Biondich Decl., Ex. 3 (Docket Item 53-3).  In addition, the letter stated that "Colony expressly reserves all rights to deny coverage and to assert any and all exclusions or other defenses to coverage as provided in the Colony Policy and the Ace American Policy."  Id.  The Insureds

contacted Colony several times requesting that Colony participate in settlement negotiations. Bowie Decl. ¶¶ 13, 16. When the Yazdanis offered to settle the case, the offer was forwarded to Colony, and the Insureds advised Colony that if it would not enter into reasonable settlement negotiations or confirm that all claims were covered by its policy, they would enter into a settlement requiring payment only from the insurance carriers. Rapaport Decl. ¶ 35, Ex. 4; Bowie Decl. ¶¶ 13-16, Exs. C-E. Colony rejected the settlement, and on the morning of July 14, 2010, its attorney notified the Insureds that if they "consent to entry of the judgment as they propose, a judgment which is for an unreasonable amount, and which we believe is both collusive and in bad faith, Colony will be left with no realistic option but to disclaim coverage for the entire amount of the judgment." Gramovot Decl., Ex. A (Docket Item 54-1).

The Insureds and the Yazdanis ultimately agreed to settle the case, and on the afternoon of July 14, 2010, they filed with this court a joint motion seeking approval of the settlement. Joint Mot. for Entry of J., Dismissal of Certain Claims, and Approval of Settlement on Behalf of Minor Plaintiffs ("Joint Mot."), Yazdani, No. 2:09cv108-DBH (Docket Item 120). Judicial approval is required because the injured plaintiff in the underlying lawsuit and his twin brother are minors. See Local Rule 41.2; 14 M.R.S.A. § 1605. The terms of the proposed settlement include: entry of judgment against the summer camp; dismissal without prejudice of all claims against the summer camp owners; dismissal with prejudice of the Maryland Consumer Protection Act claim; and an agreement that the Yazdanis will not execute against any assets of the camp

4

or its owners beyond the insurance policies.    Joint Mot., <u>Yazdani</u>, No. 2:09cv108-DBH, at 1, 4.

On July 27, 2010, Colony filed a motion for permissive intervention in the underlying lawsuit.    <u>Yazdani</u>, No. 2:09cv108-DBH (Docket Item 130). Thereafter, the parties in that lawsuit stipulated that Colony "is permitted to intervene for the purpose of full and complete participation in the hearing to determine whether the settlement agreement reached by and between Plaintiffs and Defendants is reasonable, in good faith and not the product of collusion." Stipulated Order on Mot. for Permissive Intervention, <u>Yazdani</u>, No. 2:09cv108-DBH (Docket Item 136).   A hearing to determine whether the amount of the settlement is reasonable will be scheduled after this ruling.   Mem. Dec. and Order on Mot. to Continue Hr'g (Docket Item 89).

## ANALYSIS

### *Reach and Apply Defenses*

The Yazdanis claim that none of Colony's defenses can apply to their upcoming reach and apply lawsuit.   They rely upon Maine cases and the language of the Maine reach and apply statute.   That statute provides that an injured party [here, the Yazdanis] who recovers final judgment can "have the insurance money applied to the satisfaction of the judgment . . . if when the right of action accrued, the judgment debtor [the camp and its owners] was insured against such liability and if before the recovery of the judgment the insurer [Colony] had had notice of such accident, injury or damage."   24-A

M.R.S.A. § 2904.[2]   The statute also identifies the defenses that the "insurer shall have the right to invoke" in the litigation.   The only defenses identified in the statute that are potentially applicable here are "fraud or collusion between the judgment creditor and the insured."   24-A M.R.S.A. § 2904(6).   As a result, the Yazdanis argue that only those two defenses are available to Colony if their settlement in the underlying lawsuit is ultimately approved as reasonable.

The Maine Law Court has confirmed this reading of the statute: "The only defenses to a reach and apply action are those contained in section 2904." Patrons Oxford Ins. Co. v. Harris, 905 A.2d 819, 828 (Me. 2006).   The Law Court held in Patrons that "an insured being defended under a reservation of rights is entitled to enter into a reasonable, noncollusive, nonfraudulent settlement with a claimant, after notice to, but without the consent of, the insurer."   Id.[3]   Patrons recognizes that the insurer can challenge coverage itself (as Colony is doing in this declaratory judgment lawsuit), but if it loses on coverage, "it may be bound by the settlement, provided the settlement, including the amount of damages, is shown to be fair and reasonable, and free from fraud and collusion."[4]

---

[2] Likewise, the preceding section states: the "liability of every insurer which insures any person against accidental loss or damage on account of personal injury or death . . . shall become absolute *whenever such loss or damage, for which the insured is responsible, occurs.*"   24-A M.R.S.A. § 2903 (emphasis added).

[3] I do not rely on Gates Formed Fibre Prods., Inc. v. Imperial Cas. And Indem. Co., 702 F. Supp. 343 (D. Me. 1988), but on the later articulation of Maine law in Patrons Oxford Ins. Co. v. Harris, 905 A.2d 819, 828 (Me. 2006).

[4] There are other statements in Patrons consistent with this approach:  "The only defenses to a reach and apply action are those contained in section 2904.  The mere lack of cooperation by the insured is not dispositive on the issue of fraud or collusion.  Additionally, where the insured is being defended under a reservation of rights, the insured, who, as we have noted, is in control of his defense, may need to be in contact with the claimant, and may negotiate with

*(continued next page)*

But the reach and apply statute is available only to someone who "recovers a final judgment." 24-A M.R.S.A. § 2904. Final judgment has not yet been rendered in the underlying lawsuit here. At this point no one knows what it will look like, and I do not know if there will be a live controversy after it is entered. Until there is a final judgment, I would be rendering an advisory opinion to rule on the scope of defenses under the reach and apply statute. Therefore, I do not now decide that issue raised by the Yazdanis.

### *Insurance Policy Language*

The Colony Excess Liability Policy provides that Colony "will pay those sums that the insured becomes obligated to pay as damages in excess of the applicable limits of 'underlying insurance,'" and that Colony has "the right and duty to defend claims against the insured when the applicable Limit of Insurance of the 'underlying insurance' is exhausted." Section I.1.a, Biondich Decl., Ex. 1 (Docket Item 53-1). It also provides:

> No action shall be taken against [Colony] unless, as a condition precedent, there shall have been full compliance with all the provisions of this policy, nor until the amount of [Colony's] obligation to pay shall have been finally determined either by final and nonappealable judgment against the Insureds after trial, or by written agreement between you, the claimant and [Colony].

Id. Section III.8.a. It provides further:

> No insured shall admit liability, consent to any judgment or agree to any settlement, which is reasonably likely to result

---

the claimant and enter into a settlement that protects his interests. Although the insurer may be opposed to the insured entering into the settlement, such conduct on the part of the insured does not necessarily rise to the level of collusion." Id. at 828 (citations omitted). The Patrons Court states that the insured "was entitled to settle . . . when [the carrier] tendered its defense under a reservation of rights." Id. The insured "was entitled to negotiate . . . and enter into a reasonable, nonfraudulent settlement." Id.

> in liability on [Colony's] part without [Colony's] consent.
> Such consent will not be unreasonably withheld.

Id. Section III.4.a.

***Consent***

It is undisputed that Colony did not consent to the settlement. But it is hotly disputed whether its failure to do so was unreasonable. Whether the amount of the settlement is reasonable remains to be determined in the underlying lawsuit, after a hearing that will be scheduled after this ruling. Mem. Decision and Order on Mot. to Continue Hr'g (Docket Item 89). Until then, summary judgment and judgment on the pleadings are inappropriate on the consent issue and the related counts and counterclaims.[5]

***Insureds' Obligation to Pay***

The settlement to which the Yazdanis and the Insureds have agreed (pending a hearing and judicial approval) would result in <u>no</u> payment obligations by the Insureds. The settlement provides for the dismissal without prejudice of all claims against the camp owners, and dismissal with prejudice of the Maryland Consumer Protection Act claim. Joint Mot. at 1, <u>Yazdani</u>, No. 2:09cv-108-DBH. The settlement also provides that the Yazdanis will not execute against any assets of the summer camp and its owners beyond their insurance policies. Id. at 4. As a result of these provisions, Colony argues that under its policy language it has no obligation to pay benefits because its Insureds are not obligated to pay any damages to the Yazdanis.

---

[5] Given the <u>Patrons</u> reasoning that I discuss in this opinion, a determination that the proposed settlement is unreasonable would not necessarily *void* coverage under the Colony policy, although it certainly would affect the recoverable amount.

It is highly likely that the Maine Law Court would find that this settlement does not void the Colony insurance coverage. In Patrons, the Law Court dealt with a settlement by which the injured party "agreed not to collect a judgment from [the insured] personally" and "would attempt to collect . . . only from [the insurer] through Maine's reach and apply statute." 905 A.2d at 823. That settlement was reached after the carrier asserted a reservation of rights (*i.e.*, maintaining the option to ultimately deny coverage, as Colony did here) in agreeing to defend the insured, and declined to participate in the settlement. The Court took the "opportunity" to "address[ ] the tensions that exist between an insurer that reserved the right to deny coverage under the policy and the impact of that decision on the insured." Id. at 825. That is the situation here. The Court ruled that "an insurer who reserved the right to deny coverage cannot control the defense of a lawsuit brought against its insured by an injured party." Id. The Patrons Court gave the following reasoning: "By allowing the insured to control his own case when the insurer issues a reservation of rights, the insured can protect himself 'from the sharp thrust of personal liability.'" Id. at 826 (citations omitted). The Patrons Court recognized that a carrier can nevertheless litigate coverage by a declaratory judgment lawsuit (as Colony is doing here), but stated that where coverage exists, it "agree[d] with [the approach] that "an insurer is bound by a reasonable settlement entered into by its insured being defended under a reservation of rights" provided that "the insured or claimant can show that the

settlement was reasonable and prudent." Id. at 827 (citations and quotations omitted). Specifically:

> Making settlements such as this one binding on the insurer prevents the insurer from circumventing such settlements when it has already ceded control of the litigation to its insured. We conclude, however, that the insurer should not be liable for an unchallenged amount judicially determined after an uncontested hearing on damages, or an amount not judicially determined to which its insured agrees because the insured could agree to settle for an inflated amount in exchange for a release from liability. Thus, the damages arising from a settlement such as the one seen here is binding on the insurer only to the extent that the insured or the claimant can show that it is reasonable, and only after coverage is deemed to exist.

Id. In this case, Colony will have precisely the opportunity that the Law Court specified in Patrons. In the upcoming fairness hearing in the underlying lawsuit, it has been stipulated that Colony:

> is permitted to intervene for the purpose of full and complete participation in the hearing to determine whether the settlement agreement reached by and between Plaintiffs and Defendants is reasonable, in good faith and not the product of collusion. The parties agree that [Colony] shall be permitted full participation at said hearing, including the right to present witnesses, admit exhibits, object to the calling of witnesses or the admission of exhibits, and to cross-examine witnesses.

Stipulated Order on Mot. for Permissive Intervention, at 1, Yazdani, No. 2:09cv108-DBH.

The Law Court did consider in a Patrons footnote the carrier's argument there that "inclusion of a covenant not to execute [as the Yazdanis have agreed here] ipso facto renders the . . . settlement unreasonable." 905 A.2d 827 n.7. The Law Court said that because it was remanding for a reasonableness hearing "we need not fully address this argument," but added, "we do pause to

note that settlements including non-execution provisions have routinely been upheld." Id.[6] If that footnote leaves any room at all for Colony's argument, its scope should be determined by the Law Court itself, as by certification from this court under 4 M.R.S.A. § 57. That should occur only upon a complete record, and only once the issue is no longer premature. As I have already stated, there is as yet no final judgment in the underlying lawsuit, and the settlement has not yet been judicially approved. That disposition holds also for Colony's argument that the Patrons analysis does not apply to an excess liability carrier like Colony. The Patrons language is broad. If any case can be made for narrowing it, ideally that should be for the Maine Law Court to determine. Although I am dubious about Colony's arguments on these issues, I conclude for the reasons given that summary judgment in the Yazdanis' favor is inappropriate at this time.

Finally, I recognize that Colony tries to fold the "reasonableness of settlement" issue into the coverage issue. In effect, it argues that its policy language (requiring consent and an insured's obligation to pay damages as a condition precedent to coverage) have collapsed the two elements of Patrons, and made inapplicable the Patrons holding about an insured's settlement authority when an insurer asserts a reservation of rights. That is not a faithful reading of Patrons, and I refuse to endorse it. Patrons deals with a Maine

---

[6] Beal v. Allstate Ins. Co., 989 A.2d 733 (Me. 2010), cited by the Yazdanis, is somewhat analogous but not dispositive. It certainly recognizes the Maine public policies of encouraging settlement and preserving insurance coverage and allocating risks between insurers. But it dealt with uninsured/underinsured motorists coverage, and the policy language at issue ("legally entitled to recover") is somewhat different from the Colony provision ("obligated to pay as damages").

statute whose language is clear. The coverage question is measured at the time of the covered injury: "the judgment creditor [here, the Yazdanis] shall be entitled to have the insurance money applied to the satisfaction of the judgment . . . *if when the right of the action accrued, the judgment debtor was insured* against such liability." 24-A M.R.S.A. § 2904 (emphasis added).[7] Furthermore, the provision immediately preceding the reach and apply statute makes clear that the "liability of every insurer which insures any person against accidental loss or damage on account of personal injury or death . . . shall become absolute when such loss or damage, for which the insured is responsible, occurs." 24-A M.R.S.A. § 2903. Colony cannot, by its policy language, thwart the Maine statutory language and the holding of <u>Patrons</u>.

### *Unfair Claims Practices Act*

Only Colony moves for summary judgment on the Insureds' claims for recovery under Maine's Unfair Claims Settlement Practices Act, 24-A M.R.S.A. § 2436-A. Colony Insurance Company's Mot. for Summ. J., at 1-2, 24-28 (Docket Item 51). There are genuine issues of material fact in dispute as to whether Colony failed to acknowledge and review the claims in a timely manner, failed to make a timely reservation of rights, or failed to engage in reasonable settlement discussions. Those issues require denial of summary judgment.

---

[7] <u>Edwards v. Lexington Ins. Co.</u>, 507 F.3d 35, 39 (1st Cir. 2007) is not applicable, because <u>Edwards</u> involved a "claims-made policy," not an "occurrence policy." As the First Circuit stated in <u>Edwards</u>, in a claims-made policy, the claim is the covered event, not the occurrence.

## CONCLUSION

The Motions for Summary Judgment and Judgment on the Pleadings are
DENIED.

**SO ORDERED.**

**DATED THIS 9TH DAY OF DECEMBER, 2010**

/s/D. Brock Hornby
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**